UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE SHADUR
MAGISTRATE JUDGE VALDEZ

09 CR 672

| | |
|---|---|
| UNITED STATES OF AMERICA | ) No. 09 CR _____ |
| | ) |
| v. | ) Violations: Title 21, United States Code, |
| | ) Sections 841, 846, 952(a), 960, 963 |
| ARTURO BELTRAN-LEYVA, | ) |
| a/k/a "AB-L," | ) |
| a/k/a "El Barbas," | ) **INDICTMENT** |
| MANUEL LAST NAME UNKNOWN, | ) |
| a/k/a "Manny," | ) |
| a/k/a "El Musico," and | ) **UNDER SEAL** |
| MANUEL FERNANDEZ-NAVARRO, | ) |
| a/k/a "La Puerca" | ) |

FILED
AUG 6, 2009
AUG - 6 2009
August 6, 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

<u>COUNT ONE</u>

The SPECIAL FEBRUARY 2008-2 GRAND JURY charges:

1. Beginning no later than in or about February 2007, and continuing until on or about December 1, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ARTURO BELTRAN-LEYVA,
a/k/a "AB-L,"
a/k/a "El Barbas,"
MANUEL LAST NAME UNKNOWN,
a/k/a "Manny,"
a/k/a "El Musico," and
MANUEL FERNANDEZ-NAVARRO,
a/k/a "La Puerca,"

defendants herein, did conspire with each other, with Pedro Flores and Margarito Flores, and with others known and unknown to the Grand Jury, knowingly and intentionally to possess with intent to distribute and to distribute controlled substances, namely 5 kilograms or more

-1-

of mixtures and substances containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, and 1 kilogram or more of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

*The Participants in the Conspiracy*

2. It was part of the conspiracy that defendant ARTURO BELTRAN-LEYVA directed a cocaine and heroin drug trafficking organization in Mexico commonly known to its members and its associates as the "BELTRAN-LEYVA CARTEL," which obtained multi-ton quantities of cocaine and heroin, and smuggled multi-kilogram quantities of cocaine and heroin into the United States from Mexico and elsewhere. ARTURO BELTRAN-LEYVA was a leader of the BELTRAN-LEYVA CARTEL, and was ultimately responsible for its operation.

3. It was further part of the conspiracy that defendant MANUEL LAST NAME UNKNOWN ("MANUEL LNU") was associated with the BELTRAN-LEYVA CARTEL, and acted as a logistical coordinator who coordinated deliveries of multi-kilogram quantities of cocaine and heroin into the United States on behalf of defendant ARTURO BELTRAN-LEYVA and the BELTRAN-LEYVA CARTEL, and deliveries of millions of dollars of cash narcotics proceeds to ARTURO BELTRAN-LEYVA and the BELTRAN-LEYVA CARTEL from its customers in the United States.

4. It was further part of the conspiracy that defendant MANUEL FERNANDEZ-NAVARRO was associated with the BELTRAN-LEYVA CARTEL, and acted as a narcotics

broker for, and a customer of, the BELTRAN-LEYVA CARTEL. In conjunction with the BELTRAN-LEYVA CARTEL, MANUEL FERNANDEZ-NAVARRO received deliveries of multi-kilogram quantities of cocaine and heroin in the United States and elsewhere which were distributed in the United States, and subsequently made deliveries of cash to ARTURO BELTRAN-LEYVA and the BELTRAN-LEYVA CARTEL from the proceeds of cocaine and heroin sold in the United States.

5. It was further part of the conspiracy that the Pedro and Margarito Flores ("the Flores Brothers") and their associates (collectively, "the Flores Crew") operated a wholesale cocaine and heroin distribution organization that distributed thousands of kilograms of cocaine and multi-kilogram quantities of heroin in the Chicago, Illinois, area and elsewhere, supplied in substantial part through a continuing relationship with ARTURO BELTRAN-LEYVA, MANUAL LNU, and the BELTRAN-LEYVA CARTEL.

*The Operation of the Conspiracy*

6. At times during the conspiracy, ARTURO BELTRAN-LEYVA and members of the BELTRAN-LEYVA CARTEL were affiliated with a group of cocaine and heroin trafficking organizations in Mexico commonly known to its members and associates as the "the Federation." The Federation was comprised of an alliance of several drug trafficking organizations including, among others, the BELTRAN-LEYVA CARTEL and an organization commonly known to its members and its associates as the "Sinaloa Cartel." In approximately early 2008, a split occurred between the Federation and the Sinaloa Cartel, including two of its leaders Joaquin Guzman-Loera and Ismael Zambada-Garcia, on the one

hand, and ARTURO BELTRAN-LEYVA and the BELTRAN-LEYVA CARTEL, on the other. This split resulted in the BELTRAN-LEYVA CARTEL ending its alliance with the Sinaloa Cartel and the rest of the Federation. After this split, the Sinaloa Cartel and its allies, and the BELTRAN-LEYVA CARTEL and its allies, became engaged in a violent war in Mexico over various issues, including control of lucrative narcotics trafficking routes into the United States, and the loyalty of wholesale narcotics customers, including but not limited to, the Flores Brothers.

7. At times during the conspiracy, ARTURO BELTRAN-LEYVA and members of the BELTRAN-LEYVA CARTEL coordinated their narcotics trafficking activities with other affiliated cartels.

8. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL arranged for the transportation of multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, to the interior of Mexico, and arranged for the transportation of multi-ton quantities of cocaine, generally in shipments of hundreds of kilograms at a time, as well as multi-kilogram shipments of heroin, from the interior of Mexico to the United States border, and then into and throughout the United States, using various means, including but not limited to private aircraft, submarines and other submersible and semi-submersible vessels, container ships, "go-fast" boats, fishing vessels, buses, tractor trailers, and automobiles.

9. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA,

MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL, agreed with the Flores Brothers to use the Flores Crew to distribute multi-kilogram quantities of cocaine and heroin in Chicago, Illinois and elsewhere.

10. It was further part of the conspiracy that at certain times during the conspiracy, Pedro Flores and Margarito Flores agreed with MANUEL FERNANDEZ-NAVARRO to jointly purchase and distribute from Chicago, Illinois and elsewhere, multi-kilogram quantities of cocaine from ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL.

11. It was further part of the conspiracy that at certain times during the conspiracy, the Flores Crew obtained and distributed from Chicago, Illinois and elsewhere, on average, approximately 1500 to 2000 kilograms of cocaine per month, and received a substantial portion of that quantity from ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL.

12. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL, provided the Flores Crew with multi-kilogram quantities of heroin, for distribution to others in Chicago, Illinois and elsewhere.

13. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL, "fronted" multi-kilogram quantities of cocaine and heroin to the Flores Crew and others, which means that ARTURO BELTRAN-LEYVA and members of the BELTRAN-LEYVA CARTEL,

provided cocaine and heroin to the Flores Crew and others on consignment, without payment at the time of delivery. Payment was subsequently made by the Flores Crew and others after some or all of the cocaine and heroin was sold to customers of the Flores Crew.

14. It was further part of the conspiracy that for some shipments of narcotics from the BELTRAN-LEYVA CARTEL, the Flores Crew received the cocaine and heroin in the greater Chicago, Illinois area. For other shipments, the Flores Crew received the cocaine and heroin in the greater Los Angeles, California area, where truck drivers for the Flores Crew transported the cocaine and heroin to the greater Chicago, Illinois area for further distribution. For other shipments, the Flores Crew received the cocaine and heroin in Mexico, where truck drivers for the Flores Crew transported the cocaine and heroin to the greater Chicago, Illinois area for further distribution.

(a) Among the shipments received from the BELTRAN-LEYVA CARTEL, in approximately May 2007, Pedro Flores and Margarito Flores agreed to purchase between approximately 9 and 11 kilograms of heroin from defendant ARTURO BELTRAN-LEYVA and the BELTRAN-LEYVA CARTEL. On or about May 13, 2007, law enforcement seized approximately 9 kilograms of heroin in Berwyn, Illinois, before the heroin could be distributed in the Chicago, Illinois area. On or about May 13, 2007, law enforcement also seized approximately $1,100,000 in United States currency in Berwyn, Illinois in the same residence from which the approximately 9 kilograms of heroin were recovered.

(b) Among the shipments received from the BELTRAN-LEYVA CARTEL, in or about November 2008, Pedro Flores, Margarito Flores, and MANUEL FERNANDEZ-

NAVARRO agreed to purchase approximately 1040 kilograms of cocaine from defendant ARTURO BELTRAN-LEYVA and the BELTRAN-LEYVA CARTEL. The logistics of this cocaine transaction were arranged by defendant MANUEL LNU. Before this cocaine could be transported to or distributed in the Chicago, Illinois area, the cocaine was seized by law enforcement in the Los Angeles, California area. Specifically, on or about November 15, 2008, law enforcement seized approximately 600 kilograms of cocaine in the Los Angeles, California area; on or about November 21, 2008, law enforcement seized approximately 290 kilograms of cocaine in the Los Angeles, California area; and on or about November 30, 2008, law enforcement seized approximately 154 kilograms of cocaine in the Los Angeles, California area. On or about November 30, 2008, law enforcement also seized approximately $407,547 in United States currency in the Los Angeles, California area in the same residence from which the approximately 154 kilograms of cocaine were recovered.

15. It was further part of the conspiracy that the Flores Crew used several warehouse locations to unload and store shipments of cocaine and heroin received from the BELTRAN-LEYVA CARTEL in the greater Chicago, Illinois area.

16. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL, caused the delivery of large quantities of cocaine and heroin within the Chicago area and elsewhere to members of the Flores Crew for further distribution. The Flores Crew in turn sold the cocaine and heroin for cash to wholesale customers in the Chicago, Illinois area, as well as to customers in Detroit, Michigan; Cincinnati, Ohio; Philadelphia, Pennsylvania; Washington, D.C.; New

York, New York; Vancouver, British Columbia; Columbus, Ohio; and elsewhere. Wholesale customers in these cities further distributed the cocaine and heroin to other cities, including Milwaukee, Wisconsin.

17. It was further part of the conspiracy that several members of the Flores Crew were responsible for: (a) unloading narcotics shipments; (b) delivering the narcotics to one of several storage locations used by the Flores Crew; (c) separating narcotics deliveries into smaller amounts to be distributed to customers of the Flores Crew; and (d) delivering narcotics to customers of the Flores Crew.

18. It was further part of the conspiracy that members of the Flores Crew were responsible for: (1) collecting and picking up payment from customers of the Flores Crew; (2) delivering this money to various storage locations used by the Flores Crew; (3) counting and packaging the money; and (4) reporting cash receipts to the Flores Brothers.

19. It was further part of the conspiracy that members of the Flores Crew and other co-conspirators counted the cash narcotics proceeds and packaged them so that they could be delivered to couriers who would transport them back to Mexico. Members of the Flores Crew then delivered, and caused to be delivered, millions of dollars in cash narcotics proceeds to other co-conspirators, including members of the BELTRAN-LEYVA CARTEL, who would smuggle the proceeds back to Mexico.

20. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL, regularly received multi-million dollar payments from the Flores Crew after the delivery of cocaine and heroin

was made to the Flores Crew. ARTURO BELTRAN-LEYVA, MANUEL LNU, and members of the BELTRAN-LEYVA CARTEL, transported and caused the transportation of large quantities of United States Currency from the sale of cocaine and heroin from locations in the United States to locations in Mexico.

21. It was further part of the conspiracy that the Flores Crew maintained ledgers, in paper and electronic form, which tracked information relating to the Flores Crew's drug-trafficking activities, including, but not limited to: (1) amounts of narcotics received; (2) money sent to sources of supply; (3) amounts of narcotics delivered to customers of the Flores Crew; (4) the courier or couriers responsible for particular deliveries to customers; (5) money received from customers; and (6) payments to members of the Flores Crew.

22. It was further part of the conspiracy that members of the BELTRAN-LEYVA CARTEL and Flores Crew, utilized various means to communicate with each other, including but not limited to cellular telephones, radios, computers, and hand-held PDAs to facilitate their drug trafficking activities.

23. It was further part of the conspiracy that defendants used coded language and other means to misrepresent, conceal and hide, and to cause to be misrepresented, concealed and hidden, the drug trafficking activities of the conspiracy, and to avoid detection and apprehension by law enforcement authorities.

24. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA and members of the BELTRAN-LEYVA CARTEL, utilized various means to evade law enforcement and protect their narcotics distribution activities, including bribery of corrupt

officials; violence and threats of violence; and intimidation of law enforcement, rival narcotics traffickers, and members of their own drug trafficking organizations.

25. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA and members of the BELTRAN-LEYVA CARTEL, utilized various means to ensure they received payment for their narcotics distribution activities, including violence and threats of violence.

26. It was further part of the conspiracy that ARTURO BELTRAN-LEYVA and members of the BELTRAN-LEYVA CARTEL, utilized various means to protect and further their narcotics distribution activities from rival narcotics trafficking organizations, including but not limited to the Sinaloa Cartel. These means included, but were not limited to, threatening acts of violence to their wholesale narcotics distributors, including the Flores Brothers, if they engaged in narcotics trafficking with rival cartels, including the Sinaloa Cartel;

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## COUNT TWO

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1.  The Grand Jury realleges and incorporates by reference Count One of this indictment as though fully set forth herein.

2.  Beginning no later than in or about February 2007, and continuing until on or about December 1, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

>               ARTURO BELTRAN LEYVA,
>                    a/k/a "AB-L,"
>                   a/k/a "El Barbas,"
>             MANUEL LAST NAME UNKNOWN,
>                    a/k/a "Manny,"
>                a/k/a "El Musico," and
>             MANUEL FERNANDEZ-NAVARRO,
>                   a/k/a "La Puerca,"

defendants herein, did conspire with each other, with Pedro Flores and Margarito Flores, and with other persons known and unknown to the Grand Jury, knowingly and intentionally to import into the customs territory of the United States from a place outside the United States, namely, Mexico, a controlled substance, namely, more than 5 kilograms of mixtures and substances containing a detectable amount of cocaine, a Schedule II Narcotic Drug Controlled Substance, and more than 1 kilogram of mixtures and substances containing a detectable amount of heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Sections 952(a) and 960;

All in violation of Title 21, United States Code, Section 963, and Title 18, United States Code, Section 2.

## COUNT THREE

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

On or about November 15, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

>ARTURO BELTRAN LEYVA,
>a/k/a "AB-L,"
>a/k/a "El Barbas,"
>MANUEL LAST NAME UNKNOWN,
>a/k/a "Manny,"
>a/k/a "El Musico," and
>MANUEL FERNANDEZ-NAVARRO,
>a/k/a "La Puerca,"

defendants herein, did attempt to knowingly and intentionally possess with intent to distribute, and did attempt to cause the possession with intent to distribute, a controlled substance, namely, 5 kilograms or more of mixtures and substances containing a detectable amount of cocaine, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION

The SPECIAL FEBRUARY 2008-2 GRAND JURY further charges:

1. The allegations of Counts One, Two and Three of this Indictment are realleged and incorporated by reference as if fully restated herein for the purpose of alleging that certain property is subject to forfeiture to the United States pursuant to the provisions of Title 21, United States Code, Section 853.

2. As a result of their violations of Title 21, United States Code, Sections 841(a)(1), 846, and 963, as alleged in the foregoing Indictment,

> ARTURO BELTRAN LEYVA,
> a/k/a "AB-L,"
> a/k/a "El Barbas,"
> MANUEL LAST NAME UNKNOWN,
> a/k/a "Manny,"
> a/k/a "El Musico," and
> MANUEL FERNANDEZ-NAVARRO,
> a/k/a "La Puerca,"

defendants herein, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a)(1) and (2): (1) any and all property constituting or derived from, any proceeds they obtained, directly or indirectly, as a result of the violations; and (2) any and all of property used, or intended to be used, in any manner or part, to commit or facilitate the commission of the violations.

3. The interests of the defendants, jointly and severally, subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 853, include, but are not limited to: $885,000,000 in United States Currency, representing the estimated proceeds of

defendants narcotics distribution organization.

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY