IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Docket No. 09 CR 672-3 |
| | ) | |
| Plaintiff, | ) | Chicago, Illinois |
| | ) | February 27, 2015 |
| v. | ) | 11:04 a.m. |
| | ) | |
| MANUEL FERNÁNDEZ-VALENCIA, | ) | |
| charged as Manuel | ) | |
| Fernández-Navarro, | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF PROCEEDINGS - Change of Plea
BEFORE THE HONORABLE RONALD A. GUZMÁN

APPEARANCES:

For the Government: HON. ZACHARY T. FARDON
United States Attorney by
MR. MICHAEL J. FERRARA
MS. ERIKA L. CSICSILA
Assistant United States Attorneys
219 S. Dearborn Street
5th Floor
Chicago, IL 60604

For the Defendant: LAW OFFICES OF FRANCIS C. LIPUMA by
MR. FRANCIS C. LIPUMA
300 S. Wacker Drive
Suite 1700
Chicago, IL 60606

Also Present: MR. JORGE CARBAJOSA, Court Interpreter

Court Reporter: LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1432
Chicago, IL 60604
312.435.6053
laura_renke@ilnd.uscourts.gov

(In open court; defendant present.)

THE CLERK: 09 CR 672, Defendant 3, United States of America v. Fernández.

MR. FERRARA: Good morning, your Honor. Michael Ferrara and Erika Csicisla on behalf of the United States.

MR. LIPUMA: Good morning, your Honor. Frank Lipuma on behalf of Manuel Fernández-Valencia, who is present in court.

THE INTERPRETER: Jorge Carbajosa, Spanish/English interpreter.

THE COURT: Good morning, everyone.

Blind plea?

MR. LIPUMA: Judge, we have a plea declaration. We submitted a copy to your office yesterday -- to your chambers, rather.

And, Judge, if I may tender original copies of a plea declaration in the English language, along with a plea declaration in the Spanish language, signed by my client and myself, your Honor, and I signed on behalf of co-counsel Susan Shatz, who is in trial before Judge Castillo, and Mr. Gustavo Garcia-Montes, who visited with my client yesterday, Judge, at the MCC and has since returned to Miami.

THE COURT: So here's the question. Since we have two plea declarations, one in English and one in Spanish, what will happen if there is a difference in the two declarations that

turns out to be material?

MR. LIPUMA: Well, Judge, if I may. Tony Rosado is the -- Rosales, rather, is the federal court-certified interpreter who Mr. Fernández hired to translate the English plea declaration into the Spanish plea declaration. He several weeks ago, Judge, with -- in my presence recited and translated the English version of the plea declaration to Mr. Fernández, and then when we were in court, we identified for the Court that we were going to have it translated into Spanish.

He did that shortly after that hearing, Judge, was completed. Mr. Fernández was given a copy of that days after our hearing. He had that in his possession yesterday. He understood the terms in both the English and Spanish language.

So we don't believe there are any material differences between the two versions, and I actually specifically --

THE COURT: That's what we all hope, and I have no reason to believe otherwise. My question really is one of a matter of procedure, if this is what we want to do in the future.

MR. FERRARA: Your Honor, I think from --

THE COURT: In the past what we've done is simply verified that the defendant was able through an interpreter and through his attorney to review the plea agreement or declaration and that he's satisfied he understands them.

But we had only one operative document, and that was

the English language version. We now have two operative documents, which we hope are substantially the same, which is all you can ever really accomplish.

The question becomes if at some point in the future, say in a habeas petition, someone wishes to challenge this plea, are we making this a potential pitfall that didn't previously exist?

MR. FERRARA: Your Honor, I think from the government's perspective, the English document would still have to control since English is the only language recognized by the Court.

The government agrees that there do not appear to be any material differences. We've had several meetings with the defense. The translation has never appeared to be an issue in any of these quite lengthy plea negotiations.

So in this particular instance, your Honor, the government shares the defendant's confidence that we won't have issues down the line; but if such an issue did arise in this matter or another matter, the government's position would be -- would have to be that the English document is the controlling document.

MR. LIPUMA: And, Judge, we would concur with that, that the English document is the document that controls.

But if the Court still has a hesitation about entry of the Spanish language plea declaration, then we can, I submit,

not file that as of record in this case and rely exclusively on the English version of the plea declaration.

I have tendered, obviously, a copy of the Spanish language to the government. I'm sure the Court will do a full colloquy today with respect to the waiver of rights and everything else that's contained in the English version. So perhaps this -- we can use the Spanish language version just as a model, an instructive model of the extent we went to to make sure that Mr. Fernández's plea is voluntary, knowingly and intelligently made.

THE COURT: All right. We'll proceed on the basis of the original plea declaration in English. I think that's really the only way to do it, or I think it's the best way to do it.

Mr. Fernández, are you understanding the interpreter, sir?

THE DEFENDANT: Yes.

THE COURT: Have you understood all that we have said so far?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied that you understand the contents of this plea declaration that you have signed?

THE DEFENDANT: Yes, yes.

THE COURT: Very well.

My understanding then from your attorney, that it's

your wish today to change your plea from not guilty to a plea of guilty as to Count I of the indictment against you.

Is that correct, sir?

THE DEFENDANT: Yes.

THE COURT: Okay. Count I of the indictment alleges that in or about November 2008, you conspired with Pedro and Margarito Flores and with others to knowingly and intentionally possess, with intent to distribute, a controlled substance, namely, 5 kilograms or more of cocaine.

Is that the offense that you are pleading guilty to today?

THE DEFENDANT: Yes.

THE COURT: Okay. Before I can accept your plea of guilty, I have to satisfy myself of several things: first, that you are competent, mentally competent, to enter a plea to this offense; second, that you understand the charge that you're pleading guilty to; third, that you understand the consequences of pleading guilty to these charges; and, finally, that you understand the constitutional rights that you will be giving up or surrendering if you insist on pleading guilty here today rather than pleading not guilty and insisting on a trial.

I satisfy myself of these things by asking you a series of questions. And because it's important that you answer those questions truthfully, we're now going to place you under oath.

Raise your right hand.

(Defendant duly sworn.)

THE DEFENDANT: Yes.

THE COURT: Because you are under oath now, if you should answer any of the questions I'm about to ask you falsely, any false answers you give may later be used against you in a separate prosecution for perjury or for making a false statement under oath.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Please state your full name.

THE DEFENDANT: Manuel Fernández-Valencia.

THE COURT: And where were you born?

THE DEFENDANT: In El Aguaje, Michoacán, Mexico.

THE COURT: Okay. A little bit louder from the interpreter, please.

Are you a citizen of the United States?

THE DEFENDANT: No.

THE COURT: Okay. Are you a permanent resident of the United States?

THE DEFENDANT: No.

THE COURT: Okay. How old are you?

THE DEFENDANT: 46 years old.

THE COURT: And how far did you go in school?

THE DEFENDANT: Primary school.

THE COURT: How many grades?

THE DEFENDANT: Six.

THE COURT: Do you read and write in any language?

THE DEFENDANT: Spanish.

THE COURT: Can you read and write in the Spanish language?

THE DEFENDANT: Yes.

THE COURT: Have you been treated recently for any mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT: No.

THE COURT: Are you at this time under the influence of any drug, medication, or alcoholic beverage of any kind?

THE DEFENDANT: No.

THE COURT: Have you and your attorney received a copy of the indictment that contains the written charges against you in this case, and have you discussed that indictment and the charges with your attorney?

THE DEFENDANT: Yes.

THE COURT: After doing that, are you satisfied you understand the charges against you?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions for the Court about what you are charged with?

THE DEFENDANT: No.

THE COURT: Are you fully satisfied with the advice

and the representation that has been given to you in this case by your attorney, who is here with you today?

THE DEFENDANT: Yes.

THE COURT: I have before me here a document entitled Plea Declaration, which is eight pages long. On the last page, there appear to be four signatures, one of which appears to be your signature. I want to show you the last page of this plea declaration and ask you, is that your signature on the last page?

THE DEFENDANT: Yes.

THE COURT: And before signing this plea declaration, did you review it with your attorney?

THE DEFENDANT: Yes.

THE COURT: Was it translated for you?

THE DEFENDANT: Yes.

THE COURT: And after reviewing it with your attorney, are you satisfied that you understand all of the terms, all of the conditions, and all of the representations in this plea declaration that you have signed?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promises or assurances of any kind to you in an effort to induce you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you or attempted in

any way to force you to plead guilty in this case?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty of your own free will then because you actually are guilty?

THE DEFENDANT: Yes.

THE COURT: You understand that the terms and conditions and representations made in your plea declaration are not binding upon me and that any estimates with respect to the guideline sentencing range or estimates with respect to what your sentence might be are not binding upon this Court and that I can, after you have pled guilty, without allowing you to withdraw your plea of guilty, impose a sentence that is more severe than what you may anticipate.

Do you understand that?

THE DEFENDANT: Yes, I do understand them.

THE COURT: You understand that the offense to which you are pleading guilty is a felony offense; and because of that, if your plea is accepted and you are found guilty, this may deprive you in the future of valuable civil rights in addition to any sentence that I might impose, such as the right to vote, the right to hold public office, the right to serve on a jury, the right to possess any kind of a firearm.

In addition, if convicted, a defendant such as yourself who is not a United States citizen may be removed or deported from the United States. You may be denied any pending

or future petition for citizenship or for permanent residency, and you will likely be denied admission and never be allowed to enter the United States again.

Do you understand that?

THE DEFENDANT: Yes, I do understand.

THE COURT: Have you discussed the possible immigration consequences of a guilty plea with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about that for the Court?

THE DEFENDANT: No.

THE COURT: Will the Assistant United States Attorney then inform the record and the defendant of the maximum statutory penalties that the defendant faces.

MR. FERRARA: Yes, your Honor.

The charge to which the defendant intends to plead guilty carries a maximum sentence of life imprisonment, a maximum fine of $10 million, and a maximum term of supervised release of life, as well as a special assessment of $100, your Honor.

(Counsel conferring.)

MR. FERRARA: Or, actually, I apologize, your Honor. Because of the time that the offense was charged, the maximum fine is 4 million, not 10 million.

THE COURT: Maximum sentence is life in prison?

MR. FERRARA: Yes, your Honor.
THE COURT: Is there a mandatory minimum?
MR. FERRARA: There is a ten-year mandatory minimum on this offense, your Honor.
THE COURT: And is the offense probationable?
MR. FERRARA: No, your Honor.
THE COURT: Sir, the offense that you are pleading guilty to, as you have just heard, carries a mandatory minimum sentence of ten years in prison and a maximum sentence that could be up to the rest of your life.
Do you understand that?
THE DEFENDANT: Yes.
THE COURT: It also carries a possible fine of up to $4 million.
Is there any other financial penalty?
MR. FERRARA: Your Honor, there's a forfeiture allegation of approximately $885 million.
THE COURT: How much?
MR. FERRARA: 885 million associated with Count I of the indictment.
THE COURT: Okay. The possible sentence in this case could include a fine of up to $4 million. It could include an order that you provide restitution, or repay, a total of $885 million. And you may not be sentenced to probation. And, finally, it carries a $100 statutory payment.

The Assistant United States Attorney also mentioned a period of supervised release. What that means is this: If you are sentenced to a period of incarceration as you must be in this case, once you have served your time in prison and you are released, you will be released to the Court's supervision for a period of time. In your case, that period of supervision can be up to life.

Is there a mandatory minimum supervised release?

MR. FERRARA: Yes, your Honor, five years.

THE COURT: It must be at least five years and could be for the rest of your life.

If while you are on the Court's supervised release you should violate any of the conditions of the release, and I so find after a hearing, you could be sent back to jail again.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions for the Court about the maximum and minimum and possible sentences for the offense you are pleading guilty to?

THE DEFENDANT: No.

THE COURT: Are you satisfied, sir, that you understand all the possible consequences to you of pleading guilty to this offense?

THE DEFENDANT: Yes.

THE COURT: Under the Sentencing Reform Act of 1984,

the United States Sentencing Commission has issued guidelines for judges to consider in determining what the actual sentence in a criminal case such as yours should be. These guidelines are no longer mandatory, but they are still important, as the Court is required to consider the guidelines as one of the factors in deciding what the proper sentence is in your case.

Have you and your attorney talked about how these guidelines might apply to your case?

THE DEFENDANT: Yes.

THE COURT: Do you understand that I will not be able to determine the actual sentencing guideline range for your case until after you have pled guilty and a presentence investigation report is prepared? Both you and your attorney and the government's attorney will have an opportunity to provide information for that presentence investigation report. But until that is done, I will not be able to determine the actual guideline sentencing range in your case.

What that means is that any estimate your attorney may have given you, any estimate that is contained in the plea agreement -- or the plea declaration that you have signed, any estimate the Assistant United States Attorney's office may have given you, these are not binding upon the Court, and I will determine for myself what the actual guideline sentencing range is in your case.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The result, of course, is that the actual sentence I impose may be different; it may be more severe or less severe than what you expected.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And because the guidelines are no longer mandatory, of course, the sentence I impose could actually be above or below the guideline range.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty here today, you are waiving all appellate issues that might have been available if you had exercised your right to a trial; and, as a result, you may only appeal the validity of this guilty plea and whatever sentence I impose.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I want now to describe to you the constitutional rights that you will be waiving, or giving up, if you insist on pleading guilty here today.

You have the right to plead not guilty to any offense charged against you and to persist in that plea. If you did so, you would then have the right to a trial either in front of a jury; or if both you and the government agree, you could

waive your right to a jury trial and submit your case to me alone.

At either such trial, whether before a jury or to the bench, you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt.

You would have the right to the assistance of an attorney for your defense, and an attorney will be appointed for you if you cannot afford to hire your own. Your right to an attorney would apply not only to the trial itself but at every other stage of the proceedings against you.

You would have the right to see and hear all of the witnesses and to have them cross-examined in your defense.

You would have the right on your own part to refuse or decline to testify unless you voluntarily elected to do so.

And you would have the right to have this Court issue subpoenas in order to compel the attendance of any witnesses whom you wish to call to testify on your behalf.

Should you decide not to testify or to call any witnesses or to put on any evidence whatsoever, this could not be held against you, and no inference of your guilt could be drawn from the fact that you chose not to testify or to put on any evidence.

Do you understand all of these rights that you will be giving up if you insist on pleading guilty here today?

THE DEFENDANT: Yes.

THE COURT: Okay. Who is going to give the statement of facts?

MR. LIPUMA: Judge, if I may.

Judge, I have provided this plea declaration to the government last week. And I believe we are in agreement in principle on the terms and conditions. And, of course, this isn't binding on the Court, nor is it binding on the government.

But, Judge, our factual basis is stated at page 2 of the plea declaration. And Mr. Fernández is prepared to admit to the Court that in or about November of 2008, he conspired with others -- at the time, Pedro and Margarito Flores, Judge, I believe were cooperators with the government, so, therefore, they could not be considered co-conspirators.

But Mr. Fernández did conspire with others in the transportation of the cocaine from South America to Mexico and then to Los Angeles.

And Mr. Fernández is willing to admit that he knowingly and intentionally possessed, with the intent to distribute, 5 kilograms or more of cocaine.

And then specifically with the Flores brothers, Judge, he agreed to jointly invest in and purchase on credit approximately 1,040 kilograms of cocaine, which he intended to ultimately distribute to customers in the United States, including Chicago and elsewhere in the Northern District of

Illinois.

As mentioned in the factual basis, the logistics of this transaction included transportation of the cocaine from South America to Mexico by another and delivery to Mr. Fernández and his co-conspirators in Mexicali, Mexico. The conspirators then caused the transportation of the cocaine into the United States.

Before the cocaine could be transported to and distributed in the Chicago area, the cocaine was seized by law enforcement in Los Angeles, California, area.

On or about November 15, 2008, law enforcement seized approximately 600 kilograms of cocaine.

On or about November 21st, 2008, law enforcement seized approximately 290 kilograms of cocaine.

On or about November 30, 2008, law enforcement seized approximately 154 kilograms of cocaine.

Judge, as stated in our plea declaration, Mr. Fernández recognizes that the government has the right to introduce relevant conduct as part of the sentencing process, and he has the right to object to and challenge any proposed relevant conduct, as well as any enhancements that the government may submit would apply at sentencing.

And, Judge, that's the factual basis that Mr. Fernández is prepared to admit to during this hearing today.

THE COURT: Is the government satisfied with that factual basis?

MR. FERRARA: Yes, your Honor. The government believes that this factual basis is sufficient to support a plea of guilty. And as counsel just pointed out, the government does intend to include additional conduct at the time of sentencing, part of it the charged conspiracy, which includes additional ton quantities of cocaine, as well as the additional seizures of drugs and money, including in the Northern District of Illinois, your Honor.

THE COURT: Sir, did you hear the facts just stated by your attorney?

THE DEFENDANT: Yes.

THE COURT: Are these facts true?

THE DEFENDANT: Yes.

THE COURT: Did you actually do all of those things?

THE DEFENDANT: Yes.

THE COURT: I ask you then now to state for the record, how do you plead to Count I of the indictment: guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: It is the finding of the Court that the defendant is fully competent and capable of entering an informed plea; that he is aware of the nature of the charges and the consequences of the plea; and that the plea of guilty

is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense as charged in Count I.

The plea is therefore accepted, and the defendant is now adjudged guilty of Count I of the indictment.

Date for sentencing then.

THE CLERK: May 29th at 10:30.

MR. LIPUMA: May I ask, Judge, if at all possible if we can continue that into June? My co-counsel will be present at the sentencing hearing, Judge, including the attorney from Miami and Ms. Shatz here from Chicago. And that is a period of time that we know we have cleared calendars.

THE COURT: Carole?

THE CLERK: June 10th at 10:30.

MR. LIPUMA: Thank you, your Honor.

THE COURT: Okay. If the sentencing is going to be prolonged or include significant witness testimony, let the Court know ahead of time.

MR. FERRARA: Of course, your Honor.

THE COURT: Okay.

All right. That's all. Thank you.

MR. LIPUMA: Thank you, Judge.

MR. FERRARA: Thank you, your Honor.

THE CLERK: Court stands in recess.

(Concluded at 11:35 a.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ LAURA R. RENKE* *March 30, 2015*
LAURA R. RENKE, CSR, RDR, CRR
Official Court Reporter