UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 09 CR 672-3 |
| v. | |
| MANUEL FERNANDEZ-NAVARRO | Judge Ronald A. Guzman |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

In his sentencing memorandum, the defendant has taken the extraordinary position that he is safety-valve eligible. That position is inconsistent with the evidence and the law. The defendant operated at the very highest level of two international, violent, and sophisticated drug cartels. He organized ton-level narcotics deals by negotiating with cartels led at the time by Joaquin Guzman Loera ("Chapo") and Arturo Beltran Leyva. Defendant then put his criminal plan into action by organizing others to move his drugs from within Mexico to the U.S. border, then across the border, and finally into the United States for further storage and eventual distribution. All of these actions occurred while the defendant remained in Mexico.

The defendant was the mastermind of serious criminal conduct—conduct orchestrated from thousands of miles away, but with devastating implications here in Chicago. The defendant should be held responsible for every step taken along the way by him and by others working at his behest to ensure his drugs made their way into our communities. A low-end guidelines range sentence of 324 months'

imprisonment is sufficient, but not greater than necessary to satisfy all of the Section 3553 factors. But such a sentence is, in fact, necessary to ensure the defendant's sentence sufficiently reflects the seriousness of his offense, and to ensure just punishment for the defendant's remarkable conduct.

## I. All of Defendant's Offense Conduct and Relevant Conduct Should Be Considered At Sentencing.

Through his sentencing memorandum, the defendant asks this Court to view his offense conduct through the narrowest of lenses, and only consider the defendant's own personal actions in connection with one (albeit massive) drug transaction before finding defendant safety-valve eligible. But that position is contrary to what the Guidelines and the law proscribe.

First, under the Guidelines, the defendant's offense conduct, specific offense characteristics, adjustments (such as for a leadership role), and eligibility for safety-valve relief are determined on the basis of the totality of his criminal conduct for the charged offense, plus acts that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3(a)(1)-(2); *see also* U.S.S.G. § 5C1.2, App. Note 3 ("'*Offense,'*' as used in subsection (a)(2)-(4), and "offense or offenses that were part of the same course of conduct or of a common scheme or plan," as used in subsection (a)(5), mean the offense of conviction and all relevant conduct"). More specifically, the offense conduct includes "all acts . . . 'committed . . . commanded, induced, procured, or willfully caused by the defendant," and "all acts and omissions of others that were within the scope of []

jointly undertaken criminal activity, in furtherance of that criminal activity, and reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1). In addition, the guidelines require the Court to consider the defendant's "acts . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.13(a)(2).[1]

Thus, contrary to the defendant's position, this Court should consider the entirety of the defendant's drug trafficking conduct at issue in determining the Guidelines, including safety-valve eligibility. In doing so, it is clear that the defendant the enhancements identified by the government are required by the law, and defendant is clearly ineligible for safety-valve relief. The defendant organized and led wide-reaching drug trafficking activities. The defendant knowingly employed, organized, and directed others, and caused many more individuals, to participate in his criminal plan, which physically spanned more than one thousand

[1] An act is part of the same "common scheme or plan" if the act is substantially connected to the charged conduct by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S.S.G. § 1B1.3 Appl. Note 9; *United States v. Zehm*, 217 F.3d 506, 511 (7th Cir. 2000). Here, the defendant's criminal conduct at issue clearly falls within the same "common scheme or plan."

miles and involved multiple layers of criminal activity.[2] Common sense coupled with the evidence in this case dictates that the defendant organized and led his wide-reaching criminal activity. From Mexico, the defendant negotiated and planned a one-ton cocaine deal. The only way for that plan to materialize, as it clearly did (as evidenced by the November 2008 seizures of 1,044 kilos cocaine in California), was for the defendant to employ, direct, command, procure or willfully cause others to take steps in furtherance of it. Moreover, logic dictates that the only way any sophisticated drug trafficking organization would provide one ton of cocaine on credit would be for a person to gain the trust of the organization through significant prior drug trafficking conduct. In advancing his arguments, defendant completely ignores his history with the Sinaloa Cartel and Beltran Leyva Organizations that are directly a part of the multi-year conspiracy to which he pled guilty in Count One of the Indictment.

[redacted]

Further, in his sentencing memorandum, the defendant points to *United States v. Ramirez*, 783 F.3d 687 (2015) for the proposition this court should find that the "no firearms" provision of the safety-valve guideline is more narrow than the scope of the firearms enhancement, and thus the defendant is safety-valve eligible because "no evidence . . . exist[s] that Mr. Fernandez . . . induced someone else to [possess a firearm] in connection with the offense." R. 73 at 2. But that issue—the relative scope of the 'no firearms provision' and the gun enhancement—ignores the law and the facts of this case. As provided in Application Note 4 to the safety-valve guideline, the defendant should be held accountable for his own conduct as well as that which he "aided or abetted, counseled, commanded, induced, procured, or willfully caused." The government is not merely seeking to hold the defendant—a leader in conspiracy which includes large, violent organizations—accountable for the acts of co-conspirators that were reasonably foreseeable to him, but rather to hold him accountable for the conduct he induced, procured, or willfully caused. *See Ramirez*, 783 F.3d 687, 689-691 (a "judge is permitted to draw common-sense inferences when determining whether someone in the defendant's position reasonably should have foreseen that guns were in use in the conspiracy," and "the drug industry is by nature dangerous and violent, and a reasonable fact-finder is permitted to use his or her common sense in concluding that in a drug deal involving sizeable amounts of money, the presence of firearms is foreseeable") (citations omitted). Here, common sense dictates that someone in the defendant's

position, coupled with the value of the drug quantities at issue, the size of the drug deals, and the breadth of the overall criminal plan, should have foreseen that guns were in use in the conspiracy.[3]

But even if the defendant were safety-valve eligible—and he is not—justice still commands a sentence in line with the government's recommended 324 months. The implicit purpose of safety-valve relief is to provide an escape for the lowest level of offenders, those with little or no criminal history who are at the bottom of an organizational chart.[4] That is not this defendant. Rather, defendant was at the top of the international drug trafficking world, directly engaged with the leadership of multiple cartels. Defendant organized, planned and effectuated deals involving multiple tons of drugs worth millions of dollars. Indeed, it is difficult to conceive how the defendant could be any farther from the type of offender that the safety-valve provision was designed to assist.

### II. The Defendant's Position Calls Into Question His Eligibility for Acceptance of Responsibility.

Finally, given the defendant's extraordinary position with respect to the scope of his criminal conduct, and in turn his eligibility for certain guidelines

[redacted]

[4] While the defendant correctly points out in his sentencing memorandum that he has no criminal history points (R. 73 at 9), contrary his assertion in his memo that he has no adult convictions, defendant was convicted of a crime and incarcerated in Mexico.

enhancements and safety-valve relief, it is questionable whether the defendant has truly accepted responsibility for his criminal actions. Acceptance of responsibility is evidenced by the entry of a guilty plea prior to trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 3E1.1, Application Note 1(A). While a defendant may remain silent with respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction for acceptance, "a defendant who falsely denies, or frivolously contests, relevant conduct that the court considers to be true has acted in a manner inconsistent with acceptance of responsibility." *Id.* Here, the defendant is denying not only relevant conduct but conduct that is firmly within the conspiracy charged in Count One to which he pled guilty.[5] If the defendant persists in his position at sentencing, the government reserves it right to withdraw its provisional recommendation for acceptance of responsibility.

[redacted]

Respectfully submitted,
ZACHARY T. FARDON
United States Attorney

By: *s/Erika L. Csicsila*
MICHAEL FERRARA
ERIKA CSICSILA
GEORGIA ALEXAKIS
KATHRYN MALIZIA
SEAN FRANZBLAU
Assistant United States Attorneys
(312) 353-5370

Dated: November 25, 2015