**1:09-cr-00672**
**Judge Mary M. Rowland**
**Magistrate Judge Valdez**
**DIRECT**

FILED
9/4/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

QR

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OSCAR MANUEL GASTELUM IRIBE<br>a/k/a "Manny"<br>a/k/a "Musico"<br>a/k/a "Salgado"<br>a/k/a "El Cantante" | Case No.: 09 CR 672<br><br>Violations: Title 21, United States Code, Sections 846, 848(a), (b), and (e)(1)(A), 963, and 960a; Title 18, United States Code, Sections 2339B, and 924(c)(1)(A)<br><br>**THIRD SUPERSEDING INDICTMENT** |

**COUNT ONE**

The SPECIAL JUNE 2024 GRAND JURY charges:

1. Beginning no later than in or about February 2007, and continuing until at least on or about September 4, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny"
a/k/a "Musico"
a/k/a "Salgado"
a/k/a "El Cantante"

defendant herein, did conspire with Arturo Beltran Leyva, Fausto Isidro Meza Flores (a/k/a "Chapo Isidro"), Pedro Inzunza Noriega (a/k/a "Sagitario"), and with others known and unknown to the Grand Jury, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a

Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, and 1,000 kilograms or more of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

*Overview of the Conspiracy*

2. It was part of the conspiracy that, prior to 2008, Arturo Beltran Leyva, along with his two brothers, Alfredo Beltran Leyva and Hector Beltran Leyva, directed a cocaine and heroin drug trafficking organization based in the Mexican State of Sinaloa which was commonly known to its members and its associates as the "Beltran Leyva Organization" ("BLO"), which was a powerful faction of the Sinaloa Cartel that was designed to: (1) transport drugs from countries of supply in Central and South America to Mexico; (2) transport drugs through Mexico and into the United States; (3) distribute drugs to wholesale customers in the United States; and (4) collect, launder, and transfer the proceeds of drug trafficking from the United States and elsewhere back to Mexico.

3. It was further part of the conspiracy that, prior to 2008, defendant GASTELUM IRIBE was associated with the BLO and acted as a logistical coordinator who facilitated deliveries of multi-kilogram quantities of cocaine and heroin into the

United States on behalf of Arturo Beltran Leyva and the BLO, and deliveries of millions of dollars of cash narcotics proceeds to Arturo Beltran Leyva and the BLO from its customers in the United States.

4. It was further part of the conspiracy that, after the arrest of Alfredo Beltran Leyva in early 2008, the BLO engaged in violent conflict against another faction of the Sinaloa Cartel led by Joaquin Guzman Loera ("El Chapo"). GASTELUM IRIBE and Meza Flores served as high-level lieutenants in the BLO when the conflict began and worked closely together to coordinate their drug trafficking activities, which included importing large quantities of cocaine from Central and South American countries, including Colombia, Ecuador, Bolivia, Belize, Costa Rica, Honduras, and Guatemala, to Mexico. During the course of the conflict, the BLO aligned themselves closely with Los Zetas, a violent paramilitary drug trafficking organization.

5. It was further part of the conspiracy that, by in or around 2009, GASTELUM IRIBE and Meza Flores were working together as partners and leaders of the BLO. In December 2009, Arturo Beltran Leyva was shot and killed during a capture attempt by the Mexican military. After Arturo Beltran Leyva's death, GASTELUM IRIBE and Meza Flores shared a leadership role in the BLO, which had previously been occupied by the Beltran Leyva brothers. In that role, GASTELUM IRIBE and Meza Flores each negotiated the price for, and caused to be obtained, large quantities of cocaine from Central and South American countries, to be transported to Mexico, and caused multi-kilogram quantities of cocaine, heroin,

methamphetamine, fentanyl, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States. GASTELUM IRIBE and Meza Flores each further caused drug proceeds to be laundered and transferred from the United States to Mexico and elsewhere.

6. It was further part of the conspiracy that, after the arrest of El Chapo in 2014, the Guzman faction of the Sinaloa Cartel was run by his sons, Iván Archivaldo Guzmán Salazar, Jesús Alfredo Guzmán Salazar, Ovidio Guzmán López, and Joaquín Guzmán López (collectively, the "Chapitos"). From at least in or around 2014 until in or around 2019, the Guzman faction continued to engage in a violent conflict with the faction of the Sinaloa Cartel controlled by GASTELUM IRIBE and Meza Flores, during which time GASTELUM IRIBE and Meza Flores worked with other members of the Sinaloa Cartel to traffic narcotics and control narcotics transportation routes from the Mexican State of Sinaloa to the United States border. In or around 2019, GASTELUM IRIBE and Meza Flores reached an agreement with the Guzman faction of the Sinaloa Cartel to end the conflict.

7. It was further part of the conspiracy that Pedro Inzunza Noriega, also known as "Sagitario," partnered with GASTELUM IRIBE and Meza Flores in directing the activities of the BLO, with operations continuing through the present day.

*Members of the Conspiracy*

8. It was further part of the conspiracy that, prior to his death in 2009, Arturo Beltran Leyva, GASTELUM IRIBE, and members of the BLO arranged for

the transportation of multi-ton quantities of cocaine from Central and South American countries, including Colombia and Panama, to Mexico, and arranged for the transportation of multi-ton quantities of cocaine, generally in shipments of hundreds of kilograms at a time, as well as multi-kilogram shipments of heroin, from Mexico to the United States border, and then into and throughout the United States, using various means, including but not limited to private aircraft, submarines and other submersible and semi-submersible vessels, container ships, go-fast boats, fishing vessels, buses, tractor trailers and automobiles.

9. It was further part of the conspiracy that, after Arturo Beltran Leyva's death, GASTELUM IRIBE continued the drug trafficking operations of the BLO, including by using coastal areas in the Mexican State of Oaxaca under his control, where workers received large loads of cocaine from small "panga" boats and other vessels. Using the organization of the BLO, GASTELUM IRIBE caused multi-kilogram quantities of cocaine, heroin, methamphetamine, and fentanyl to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. GASTELUM IRIBE further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of himself and the BLO.

10. It was further part of the conspiracy that Meza Flores controlled, through the command of a large contingent of gunmen, territory around the Gusave and Los Mochis areas of Mexico. Meza Flores directed the production of

methamphetamine on behalf of the BLO and caused multi-kilogram quantities of cocaine, heroin, methamphetamine, fentanyl, and marijuana to be transported from Mexico to the United States border, and then into and throughout the United States for distribution. Meza Flores further caused drug proceeds to be collected from customers in the United States and laundered and transferred from the United States to Mexico and elsewhere for the benefit of himself and the BLO.

11. It was further part of the conspiracy that Inzunza Noriega provided financing for Meza Flores. At a later time, Inzunza Noriega partnered with GASTELUM IRIBE and Meza Flores in directing the activities of the BLO.

*Operation of the Conspiracy*

12. It was further part of the conspiracy that GASTELUM IRIBE and Meza Flores, along with members and associates of the BLO, pooled their collective resources and coordinated their activities to cause tonnage quantities of cocaine and other drugs and drug precursor chemicals to be imported from Central and South American countries, including Colombia, Ecuador, Bolivia, Belize, Costa Rica, Honduras, and Guatemala, and from elsewhere, to Mexico, using various means, including cargo aircraft, private aircraft, submarines and other submersible and semi-submersible vessels, container ships, supply vessels, go-fast boats, fishing vessels, buses, rail cars, tractor trailers, automobiles, and private and commercial interstate and foreign carriers. After the drugs and drug precursor chemicals arrived in Mexico, the conspirators used shared resources to unload and store the drugs in Mexico.

13. It was further part of the conspiracy that GASTELUM IRIBE controlled a group of traffickers who coordinated a sprawling maritime operation that shipped cocaine into Mexico, so that GASTELUM IRIBE could have it imported into the United States. To further this operation, GASTELUM IRIBE controlled a portion of Oaxaca and Guerrero, Mexico, as central distribution points for the cocaine he received along the coast of Southern Mexico. GASTELUM IRIBE also received cocaine in Quintana Roo, Chiapas, and Sinaloa.

14. It was further part of the conspiracy that Meza Flores controlled the areas around Guasave and Sinaloa, where he maintained a large group of armed gunmen who controlled the area around Guasave to protect the drug trafficking interests of Meza Flores and GASTELUM IRIBE.

15. It was further part of the conspiracy that GASTELUM IRIBE and Meza Flores, along with members and associates of the BLO, used shared networks of couriers affiliated with the BLO, and coordinated their activities to cause large quantities of cocaine, heroin, methamphetamine, fentanyl, and marijuana—at times in shipments of hundreds or thousands of kilograms—to be transported from various locations in Mexico to the United States border where the drugs were then stored in multiple warehouses, stash houses, and safe houses located in the areas of Mexico City, Guasave, Oaxaca, Tijuana, Sonora, and elsewhere.

16. It was further part of the conspiracy that GASTELUM IRIBE and Meza Flores, along with members and associates of the BLO, used shared networks of couriers affiliated with the BLO, and coordinated their activities to cause drugs to be

smuggled across the United States-Mexico border using multiple means, including through the use of vehicles with hidden compartments, tractor trailers, commercial trains, buses, and tunnels.

17. It was further part of the conspiracy that GASTELUM IRIBE and Meza Flores, along with members and associates of the BLO, used shared networks of couriers and stash house operators affiliated with the BLO, and coordinated their activities to cause drugs to be unloaded and stored at multiple stash house, safe house, and warehouse locations in Illinois, California, Arizona, Texas, Missouri, Michigan, and elsewhere.

18. It was further part of the conspiracy that GASTELUM IRIBE and Meza Flores, along with members and associates of the BLO, used shared networks of couriers affiliated with the BLO to cause cocaine, heroin, methamphetamine, fentanyl, and marijuana to be transported throughout the United States, including to Chicago, Illinois, using various means, including cars, trucks, rail cars, and private and commercial interstate carriers. Members of the conspiracy directed the drugs to be stored in various stash houses and warehouses and then provided and distributed to additional members and associates of the BLO, as well to wholesale customers, on consignment, without requiring payment at the time of delivery, in multiple locations.

19. It was further part of the conspiracy that GASTELUM IRIBE and Meza Flores, along with members and associates of the BLO, used shared networks of money couriers and money launderers to cause drug proceeds to be collected from customers, counted, packaged, and transferred and laundered from the United States

to Mexico, Colombia, and elsewhere using multiple means, including bulk cash smuggling, structured bank deposits, wire transfers, currency exchange transfers, alternative credit-based systems used to transfer money without the use of wires or other traditional means, goods-based systems in which items, including cars and airplanes, were purchased in one location and transferred to another location, and other methods.

20. It was further part of the conspiracy that GASTELUM IRIBE and Meza Flores, along with members and other members and associates of the BLO, used various means to communicate with each other in order to coordinate their drug trafficking activities, including cellular telephones, satellite telephones, computers, messaging applications on smart phones (WhatsApp, Threema and others), and email accounts. In these communications, GASTELUM IRIBE, Meza Flores, and other members and associates of the BLO used coded language and other means to misrepresent, conceal and hide, and to cause to be misrepresented, concealed and hidden, the drug trafficking activities of the conspiracy, and to avoid detection and apprehension by law enforcement authorities.

21. It was further part of the conspiracy that GASTELUM IRIBE, Meza Flores, and other members and associates of the BLO, possessed with intent to distribute large quantities of drugs in various locations throughout the United States and the world, including the possession of drugs later seized by law enforcement officials in the United States, including in Chicago and elsewhere in the Northern District of Illinois, the Central District of California, the Southern District of

California, the Northern District of California, the District of Arizona, the Southern District of Texas, the Eastern District of Michigan, and elsewhere.

*Acts of Violence in Furtherance of the Conspiracy*

22. It was further part of the conspiracy that GASTELUM IRIBE, Meza Flores, and other members and associates of the BLO used and caused to be used various means to attack law enforcement, military personnel, and other cartels—including in or around October 2022 in Oaxaca, when they caused a police officer to be abducted and killed—to protect their drug distribution activities, including obtaining guns and other weapons, bribing corrupt public officials and law enforcement, inciting violence, engaging in violence, threatening violence, including murder, kidnapping, assault, and battery, including against law enforcement, rival drug traffickers, and members of their own drug trafficking organization. It was further part of the conspiracy that GASTELUM IRIBE, Meza Flores, and other members and associates of the BLO used various means to ensure they received payment for their drug distribution activities, including violence and threats of violence.

23. It was further part of the conspiracy that GASTELUM IRIBE, Meza Flores, and other members and associates of the BLO, acquired weaponry, including semiautomatic firearms, .50 caliber rifles, machineguns, rocket propelled grenade launchers, grenades, and other firearms and explosive devices.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraphs 2 through 23 of Count One of this Superseding Indictment are incorporated here.

2. Beginning no later than in or about February 2007, and continuing until at least on or about September 4, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere.

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny"
a/k/a "Musico"
a/k/a "Salgado"
a/k/a "El Cantante"

defendant herein, together with Arturo Beltran Leyva, Fausto Isidro Meza Flores (a/k/a "Chapo Isidro"), Pedro Inzunza Noriega (a/k/a "Sagitario"), and others, both known and unknown to the Grand Jury, did knowingly and intentionally engage in a continuing criminal enterprise, in that defendant committed violations of Title 21, United States Code, Sections 841(a), 846, 848(e), 952(a), 959(a), 960, and 963, including Violations One through Twelve set forth below, which violations were part of a continuing series of violations of those statutes undertaken by defendant, in concert with five or more other persons, with respect to whom defendant occupied a supervisory and management position, and was one of several principal administrators, organizers, and leaders of the continuing criminal enterprise, and from which continuing series of violations defendant obtained substantial income and resources, and which continuing criminal enterprise received in excess of $10 million

in gross receipts during one or more twelve-month period for the manufacture, importation, and distribution of cocaine, heroin, methamphetamine, fentanyl, and marijuana. The violations involved at least 300 times the quantity of a substance described in Section 841(b)(1)(B) of Title 21, United States Code, namely, 150 kilograms or more of a mixture and substance containing a detectable amount of cocaine, 30 kilograms or more of a mixture and substance containing a detectable amount of heroin, 15 kilograms or more of a mixture and substance containing a detectable amount of methamphetamine, 12 kilograms or more of a mixture and substance containing fentanyl, and 30,000 kilograms or more of a mixture and substance containing marijuana. The continuing series of violations, as defined by Title 21, United States Code, Section 848(c), included violation One through Twelve set forth below:

Violation One

3. On or about November 15, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did attempt to knowingly and intentionally possess with intent to distribute, and did attempt to cause the possession with intent to distribute, a controlled substance, namely, approximately 1,040 kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

Violation Two

4. On or about April 16, 2016, at Tijuana, Mexico, San Diego, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 1,018 kilograms of a mixture and substance containing a detectable amount of cocaine, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Three

5. On or about August 31, 2016, in Costa Rica, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 214 kilograms of a mixture and substance containing a detectable amount of cocaine, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Four

6. On or about June 1, 2018, in Mexico, the Pacific Ocean, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 1,000 kilograms of a mixture and substance containing a detectable amount of cocaine, intending and knowing that such substance would be unlawfully imported into the United States,

in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Five

7. In or about August 2018, in Mexico, the Pacific Ocean, South America, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 2,241 kilograms of cocaine, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Six

8. On or about June 27, 2019, in Mexico, the Pacific Ocean, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 2,155 kilograms of cocaine, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Seven

9. On or about March 12, 2020, in Mexico, the Pacific Ocean, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 3,000 kilograms of cocaine, intending and knowing that such substance would be

unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Eight

10. On or about November 18, 2021, in Tijuana, Mexico, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 7,976 kilograms of methamphetamine and approximately 176 kilograms of fentanyl, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Nine

11. On or about July 26, 2022, at Mexico City, Mexico, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE did knowingly and intentionally distribute a controlled substance, namely, approximately 1,680 kilograms of cocaine, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a), and Title 18, United States Code, Section 2.

Violation Ten

12. On or about November 13, 2021, in Oaxaca, Mexico, Sinaloa, Mexico, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, namely, the crimes charged in Counts One and Three of

this Superseding Indictment, did knowingly and intentionally kill and command, induce, procure, and cause the intentional killing of one or more persons, namely, Rafael Ygelsias Rivas, also known as "Pony," and such killing did result, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation Eleven

13. On or about October 22, 2022, at Mexico City, Mexico, Oaxaca, Mexico, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, namely, the crimes charged in Counts One and Three of this Superseding Indictment, did knowingly and intentionally kill and command, induce, procure, and cause the intentional killing of one or more persons, namely, Jaime Guzman, and such killing did result, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

Violation Twelve

14. On or about December 8, 2023, at Bajos de Chila, Mexico, and elsewhere, defendant OSCAR MANUEL GASTELUM IRIBE, while engaged in one or more offenses punishable under Sections 841(b)(1)(A) and 960(b)(1) of Title 21 of the United States Code, namely, the crimes charged in Counts One and Three of this Superseding Indictment, did knowingly and intentionally kill and command, induce, procure, and cause the intentional killing of one or more persons, namely, Eligio

Hernandez Cazares, and such killing did result, in violation of Title 21, United States Code, Section 848(e)(1)(A), and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Sections 848(a), 848(b), and 848(e)(1)(A).

## COUNT THREE

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraphs 2 through 23 of Count One of this Superseding Indictment are incorporated here.

2. Beginning no later than in or about February 2007, and continuing until on or about September 4, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny"
a/k/a "Musico"
a/k/a "Salgado"
a/k/a "El Cantante"

defendant herein, did conspire with Arturo Beltran Leyva, Fausto Isidro Meza Flores (a/k/a "Chapo Isidro"), Pedro Inzunza Noriega (a/k/a "Sagitario"), and with other persons known and unknown to the Grand Jury:

(a) to knowingly and intentionally import into the United States from any place outside the United States, namely, Mexico, a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-( 2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled

Substance, and 1,000 kilograms or more of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 952(a); and

(b) to knowingly and intentionally manufacture and distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, and 1,000 kilograms or more of marijuana, a Schedule I Controlled Substance, intending and knowing that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Section 959(a);

All in violation of Title 21, United States Code, Section 963.

**COUNT FOUR**

The SPECIAL JUNE 2024 GRAND JURY further charges:

On or about November 15, 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny"
a/k/a "Musico"
a/k/a "Salgado"
a/k/a "El Cantante"

defendant herein, did attempt to knowingly and intentionally possess with intent to distribute, and did attempt to cause the possession with intent to distribute, a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1);

All in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

**COUNT FIVE**

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraphs 2 through 23 of Count One of this Superseding Indictment are incorporated here.

2. Beginning no later than in or about February 2007, and continuing until on or about September 4, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny"
a/k/a "Musico"
a/k/a "Salgado"
a/k/a "El Cantante"

defendant herein, did knowingly and intentionally use and carry a firearm, during and in relation to one or more drug trafficking crimes, namely, the crimes charged in Count One of this Superseding Indictment, and did knowingly and intentionally possess a firearm in furtherance of such drug trafficking crimes, one or more of which firearms was brandished and discharged and one or more of which firearms was a machinegun;

In violation of Title 18, United States Code, Section 924(c)(1)(A).

**COUNT SIX**

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. On February 20, 2025, upon publication in the Federal Register, the United States Secretary of State, in consultation with the Attorney General, designated the Cartel de Sinaloa (also known as Sinaloa Cartel, Mexican Federation, Guadalajara Cartel), as a foreign terrorist organization, after finding that the organization engages in terrorist activity.

2. Beginning no later than in or about February 2007, and continuing until on or about September 4, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny"
a/k/a "Musico"
a/k/a "Salgado"
a/k/a "El Cantante"

defendant herein, did knowingly and intentionally engage and attempt to engage in conduct in and affecting interstate and foreign commerce and that would be punishable under Title 21, United States Code, Section 841(a), if committed within the jurisdiction of the United States, that is, to knowingly and intentionally manufacture, distribute and possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a

Schedule II Controlled Substance, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-( 2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, and 1,000 kilograms or more of marijuana, a Schedule I Controlled Substance, knowing and intending to provide directly and indirectly, anything of pecuniary value to any person and organization that has engaged and engages in terrorist activity and terrorism, having knowledge that the said persons and organization has engaged and engages in terrorist activity and terrorism.

All in violation of Title 21, United States Code, Sections 960a and 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT SEVEN

The SPECIAL JUNE 2024 GRAND JURY further charges:

1. Paragraph 1 of Count Six of this Superseding Indictment is incorporated here.

2. Beginning no later than in or about February 2007, and continuing until on or about September 4, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSCAR MANUEL GASTELUM IRIBE,
a/k/a "Manny"
a/k/a "Musico"
a/k/a "Salgado"
a/k/a "El Cantante"

defendant herein, did knowingly provide material support and resources to the Cartel de Sinaloa (also known as Sinaloa Cartel, Mexican Federation, Guadalajara Cartel), a foreign terrorist organization, knowing that the organization was a designated foreign terrorist organization, and that the organization had engaged in and was engaging in terrorist activity and terrorism;

In violation of Title 18, United States Code, Sections 2339B(a)(1) and 2.

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2024 GRAND JURY alleges:

1. Upon conviction of an offense in violation of Title 21, United States Code, Section 846, 848, or 963, as set forth in this Superseding Indictment, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained, directly and indirectly, as a result of the offense; and any property used, and intended to be used, in any manner and part, to commit and to facilitate commission of the offense, as provided in Title 21, United States Code, Sections 853(a) and 970.

2. The property to be forfeited includes, but is not limited to, a personal money judgment.

3. If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p), and Title 18, United States Code, Section 982(b).

A TRUE BILL:

FOREPERSON

ANDREW S. BOUTROS
UNITED STATES ATTORNEY
NORTHERN DISTRICT OF ILLINOIS

ADAM GORDON
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF CALIFORNIA

SOPHIA SUAREZ
ACTING CHIEF
NARCOTIC & DANGEROUS DRUG
SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE